

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| In re Application of YVES BOUVIER and MEI INVEST LTD. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings. | Civil Action No. 15 Misc. _____ |
|---|---|

# APPLICATION AND PETITION FOR AN ORDER PURSUANT TO
## 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS



McKool Smith, P.C.
Daniel W. Levy
One Bryant Park
47th Floor
New York, New York 10036
Telephone: (212) 402-9400
Telecopier: (212) 402-9444

Attorneys for Petitioners Yves Bouvier
and MEI Invest Ltd.

McKool 1119554v7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of YVES BOUVIER and MEI INVEST LTD. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings. | Civil Action No. 15 Misc. _____ |

**APPLICATION AND PETITION FOR AN ORDER PURSUANT TO
28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

1. Upon the Declaration of Daniel W. Levy ("Levy Decl." or the "Levy Declaration") and upon information and belief as to the facts alleged herein, Petitioners Yves Bouvier ("Bouvier") and MEI Invest Limited ("MEI") hereby petition and apply for an Order, pursuant to 28 U.S.C. § 1782 and Rules 26, 30, and 45 of the Federal Rules of Civil Procedure, granting Bouvier and MEI leave to serve on Respondent Sanford Heller and Respondents The Heller Group LLC and Sanford Heller Fine Art LLC (collectively, the "Respondents") the subpoenas attached as Exhibit A to the Levy Declaration.

**The Applicable Statute**

2. 28 U.S.C. § 1782(a) provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . .To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.  A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

McKool 1119554v7

**The Requested Relief**

3. The requested relief is for the purpose of obtaining discovery in aid of proceedings pending in Monaco and France (the "Foreign Proceedings").

**The Dispute Between Bouvier and Rybolovlev**

4. In general, the Foreign Proceedings arise out of the dispute between: (a) Petitioners Bouvier and MEI; and (b) two companies, Accent Delight International Ltd ("Accent Delight") and Xitrans Finance Ltd ("Xitrans"), and Dmitry Rybolovlev ("Rybolovlev").

5. The nature of the dispute is as follows:

(a) Bouvier is a Swiss businessman who owns various art-related services companies. The companies owned by Bouvier provide art storage, packing, shipping, and other services. Bouvier engages in art dealing through, among other entities, MEI. He resides in Singapore.

(b) Accent Delight and Xitrans are companies created under the law of the British Virgin Islands and are wholly owned by family trusts of Rybolovlev. Rybolovlev is a wealthy Russian industrialist and investor who resides in Monaco. Accent Delight and Xitrans are controlled, directly or indirectly, by Rybolovlev, through a trust created under the law of Cyprus.

(c) Between 2003 and 2014, Accent Delight and Xitrans acquired 38 works of art (the "Works") via 37 separate transactions through Bouvier and/or MEI. The total amount paid by Accent Delight and Xitrans for the Works is more than $2 billion. The Works include masterpieces by some of the most acclaimed artists in history, including Pablo Picasso, Vincent van Gogh, Leonardo da Vinci, and Mark Rothko.

2

(d) The central factual and legal dispute in the Foreign Proceedings concerns the capacity in which Bouvier acted in each of the transactions by which Accent Delight and Xitrans acquired the Works.

(i) Specifically, Rybolovlev, acting through Accent Delight and Xitrans, contends that Bouvier was acting as an agent who negotiated for, and obtained the Works on behalf of, Rybolovlev's entities and who, therefore, owed these entities a fiduciary duty, for example, to obtain the lowest possible prices for the Works. Despite the lack of any written agreement by which Bouvier became Rybolovlev's agent, Rybolovlev contends that compensation to Bouvier and MEI was to be solely in the form of a small percentage of the purchase price on the Works and, further, that Bouvier and MEI were not entitled to charge an undisclosed mark-up on the Works.

(ii) Bouvier denies that he was an agent of Rybolovlev's entities and instead contends that he acted as an independent seller transacting at arm's length with Rybolovlev's entities. As such, Bouvier was entitled to buy the Works himself and to sell them to Rybolovlev's entities at any price that Rybolovlev and his entities agreed to pay. As a result, Bouvier personally earned a small percentage of the transaction to cover due diligence regarding the provenance and title to the Works and various administrative services relating to the purchase of the Works (such as transportation, insurance, and restoration). Separately, MEI earned the difference between the price Bouvier and MEI paid for the Works and the price paid by Rybolovlev and his entities for the Works. *See generally* Levy Decl., Exh. B at ¶¶ 4, 6-28; Exh. C at ¶¶ 1-21.

3

(iii) In support of his contentions, Rybolovlev, acting through Accent Delight and Xitrans, relied substantially on e-mail exchanges that purportedly suggested an agency relationship with Bouvier. Levy Decl., Exh. B at ¶ 44; Exh. C at ¶ 11. After noting that specific interpretation of the e-mail exchanges, the Singapore Court of Appeal, which has ruled on whether certain injunctive relief should have been granted in a separate proceeding pending in Singapore, noted that "in our view, the circumstances of the transactions concerned as a whole cast doubt on such a characterization." Levy Decl., Exh. B at ¶ 44. With respect to these e-mail exchanges, the Court of Appeal of Singapore went on to note that:

> [T]he email correspondence, which we have referred to and which seems to corroborate [Accent Delight and Xitrans] the respondents' version of what transpired, presents at most a partial view of the entire factual landscape that is relevant to this dispute; and when the dealings are viewed in their totality, other aspects of them raise questions that hint at dealings on a principal-to-principal basis, or at the very least, that Mr Rybolovlev and the respondents were aware of and thus acquiesced in the profit which Mr Bouvier was making on the transactions concerned.

*Id.* at ¶ 48. In doing so, the Court of Appeal relied on various points, including grave doubts that Accent Delight and Xitrans could have believed that Bouvier's remuneration was limited to the small percentage that they plainly knew that they were paying Bouvier:

> [I]t is at least doubtful, even if not wholly incredible, that the respondents [Accent Delight and Xitrans] genuinely believed that the remuneration for Mr Bouvier's services was limited to the 2% fee that the respondents plainly knew they were paying him.

*Id.* at ¶ 49; *see also id.* at ¶ 50 ("According to Mr Bouvier, Mr Rybolovlev 'knows the market practices, he knows the rates of the sales houses.' If that was the case, then in the absence of any other explanation, it seemed to us improbable that the respondents could reasonably have thought that Mr Bouvier, who was acting for them to source specific artworks, negotiate the price, secure the artworks and then make them available to the respondents, would limit his takings to the 2% payment that was made on these transactions.").

4

**The Monaco Proceedings**

6.     A criminal proceeding in Monaco, *Dossier JI No. Cab1/15/04, PG n°2015/000039* (Principality of Monaco) (the "Monaco Criminal Proceeding"), was instituted by Accent Delight and Xitrans, the two companies controlled, directly or indirectly, by Rybolovlev. The Monaco Criminal Proceeding began in the form of a criminal complaint for alleged forgery and fraud filed in January 2015 by Accent Delight and Xitrans against Bouvier and "any participant." Levy Decl., Exh. C at p.1. In response to the criminal complaint, the authorities in Monaco commenced an investigation in January 2015 and eventually sought the appointment of an investigating magistrate and the initiation of proceedings concerning allegations of fraud and complicity in money laundering against Bouvier and allegations of money laundering against another person, Tania Rappo ("Rappo"). Rappo had introduced Rybolovlev to Bouvier and, as a result of that introduction, received funds from Bouvier in connection with the sales of the Works. In February 2015, Bouvier and Rappo were both arrested and released, after several days of questioning, on various conditions. *See* Levy Decl., Exh. B at ¶¶ 27-28. Bouvier is a party to the Monaco Criminal Proceeding. Levy Decl., Exh. C.

7.     In the original January 2015 complaint instituting the Monaco Criminal Proceeding, Accent Delight and Xitrans "declare[d] that they wish to institute civil proceedings as claimants." *See* Levy Decl., Exh. C at p.7. Subsequently, in February 2015, Accent Delight and Xitrans, together with Rybolovlev's daughter, Ekaterina Rybolovleva, formally joined the proceedings as civil parties. *See* Levy Decl., Exh. D at 1. Under Monegasque procedure, as in other civil law countries, a person who alleges he is the victim of a crime may formally advance his or her civil claim for damages in the criminal proceedings rather than in a civil court. These

5

claims (the "Monaco Civil Proceeding") are separate from, but related to, the criminal claims asserted in the Monaco Criminal Proceeding. Bouvier is a party to the Monaco Civil Proceeding.

8. The Monaco Criminal Proceeding and the Monaco Civil Proceeding are presently pending. Bouvier has filed a motion to dismiss the Monaco Criminal Proceeding, which would, if granted, also terminate the Monaco Civil Proceeding. That motion is pending. The Monaco Civil Proceeding could be re-initiated as a stand-alone civil case, if the Monaco Criminal Proceeding is dismissed. *See* Levy Decl., Exh. E at 2, 5, 10-11.

### The Paris Proceeding

9. Two of the Works are the subject of a criminal complaint pending in Paris (the "Paris Proceeding"). The Paris Proceeding arises out the alleged theft of two of the Works and their subsequent sale to a Rybolovlev-controlled entity. As a result, the entity controlled by Rybolovlev claims to be a victim as part of the Paris Proceeding, the allegation being that the trust purchased stolen goods. Bouvier is a subject of the Paris Proceeding. Bouvier has not been charged with a crime, but has been notified of the investigation and required to post funds representing largely the price paid for the Works. Bouvier has provided evidence to the investigating magistrate overseeing the Paris Proceeding about, among other things, the manner in which these two Works were purchased and thereafter sold to Rybolovlev.

### Further Background Regarding the Dispute

10. For the purposes only of completeness, there is presently pending in Singapore a civil proceeding against Bouvier and MEI, *Accent Delight Int'l Ltd. and Xitrans Finance Ltd. v. Bouvier, MEI Invest Ltd., and Rappo*, HC/S 236/2015 (High Court of the Republic of Singapore) (the "Singapore Proceeding"). Bouvier and MEI vigorously dispute whether Singapore is an appropriate forum and have sought, in effect, to have the Foreign Proceedings centralized.

6

Bouvier and MEI's seeking discovery in aid of the Monaco Criminal Proceeding, the Monaco Civil Proceeding, and the Paris Proceeding should not, and cannot, be construed as a concession that they regard Singapore as an appropriate forum.

11. The Singapore Proceeding was instituted by Accent Delight and Xitrans against Bouvier, MEI Invest, and Rappo in March 2015. In the Singapore Proceeding, Accent Delight and Xitrans assert claims against Bouvier for: breach of fiduciary duty; fraudulent misrepresentation; breach of duty to deliver a specific painting by artist Mark Rothko; wrongfully retaining the proceeds of a specific painting by artist Henri Toulouse-Lautrec; and conspiracy with MEI and Rappo. Accent Delight and Xitrans have also asserted in the Singapore Proceeding related claims against MEI. Bouvier and MEI are parties to the Singapore Proceeding. *See* Levy Decl., Exh. B at ¶¶ 5, 29-33.

12. In connection with instituting the Singapore Proceeding, Accent Delight and Xitrans sought on an *ex parte* basis a worldwide injunction that prevented Bouvier and MEI from disposing of any of their assets up to $500 million, wherever in the world such assets were located.

(a) The lower court before which the Singapore Proceeding is pending granted the requested injunction and, after hearing from Bouvier and MEI, slightly modified the injunction to the benefit of Bouvier and MEI. *Id.* at ¶¶ 29-32.[1]

---

[1] The injunction sought by Rybolovlev, acting through Accent Delight and Xitrans, and ordered by the lower court in Singapore is known as a *Mareva* injunction. "A *Mareva* injunction is a 'pre-judgment order enjoining a debtor from moving its assets,' in order 'to ensure the effectiveness of an ultimate remedy.'" *Velasquez v. Metro Fuel Oil Corp.*, 12 Civ. 1548, 2012 U.S. Dist. LEXIS 166817, *3, 2012 WL 5879446 (E.D.N.Y. Oct. 25, 2012). A *Mareva* injunction is an equitable remedy available in certain common law jurisdictions, but not in the United States.

(b) On August 21, 2015, the Court of Appeal of Singapore, the highest court in Singapore, set aside (or fully discharged) the injunction. *Id.* at ¶ 165. In discharging the *Mareva* injunction, the Court of Appeal noted that:

> In our judgment, the Mareva injunction obtained against Mr Bouvier in this case was an abuse of the court's process. The injunction was not obtained by the respondents to prevent the enforcement of an anticipated judgment from being frustrated. Instead, we are satisfied that it was deployed as an instrument of oppression to inflict commercial prejudice on Mr Bouvier.

*Id.* at ¶ 108.[2]

13. Despite the discharge of the *Mareva* injunction in Singapore, the Singapore Proceeding remains pending. In the Singapore Proceedings, Bouvier and MEI have moved: (a) to require Accent Delight and Xitrans to elect either Monaco or Singapore to pursue their claims against Bouvier and MEI; (b) if Accent Delight and Xitrans elect to pursue their claims in Monaco, to stay or dismiss the Singapore proceedings; and (c) if Accent Delight and Xitrans elect to pursue their claims in Singapore, to require them to bring their claims in Switzerland, which is the most natural forum in which these claims should be adjudicated and where Bouvier and MEI will assert their counterclaims. Bouvier and MEI's motion has been heard in Singapore and is pending. If Bouvier and MEI's motion in the Singapore Proceeding is decided in such a way that the Singapore Proceeding continues, then Bouvier and MEI may amend this Application and Petition to seek discovery in aid of the Singapore Proceeding.

---

[2] Based on the *Mareva* injunction initially obtained in Singapore, Rybolovlev, acting through Accent Delight and Xitrans, sought and obtained a *Mareva* injunction in Hong Kong. Following discharge of the *Mareva* injunction in Singapore, the Hong Kong *Mareva* injunction was also discharged on September 4, 2015. Proceedings in Hong Kong are no longer pending.

**The Respondents' Role in the Dispute Between Bouvier and Rybolovlev**

14. Acting through Accent Delight and Xitrans, Rybolovlev contends that he discovered the alleged breach of the duties that he claims Bouvier owed only as a result of communications that Rybolovlev had with Sanford Heller ("Heller"). Heller further injected himself into the dispute by providing written confirmation of various facts concerning the purchase of one of the Works, from both him and his client. Rybolovlev has also acknowledged Heller's continuing role in the dispute by relying on Heller's opinions in establishing his claimed damages.

15. Specifically, Heller is an art advisor who conducts business through two entities owned and/or controlled by him, Respondents The Heller Group LLC and Sanford Heller Fine Art LLC (collectively, the "Heller Entities"). Among other clients of his art advisory business, Heller advises Steven A. Cohen ("Cohen"), the prominent investor and founder of the hedge fund SAC Capital Advisors LP and later the family office Point72 Asset Management LP. *See* Levy Decl., Exh. C at ¶ 15; Exh. F at 3-5; Exh. G. On information and belief, Heller resides in Manhattan and the Heller Entities maintain their principal places of business in Manhattan. Levy Decl. at ¶ 7.

16. Rybolovlev contends that, in late December 2014, Rybolovlev was at a lunch on the Caribbean island of Saint-Barthélemy, frequently referred to as St. Barths. There, according to Rybolovlev, Heller "introduced himself as artistic advisor for several well-known people, including . . . Cohen" and then told allegedly Rybolovlev that "it appears that we sold you a painting by [Modigliani]." Heller was referring to one of the Works, specifically the painting *Nu couché au coussin bleu* (Nude on a blue cushion) by Amedeo Modigliani, the Italian artist (the "Modigliani Work"). Rybolovlev had purchased the Modigliani Work from Bouvier for $118

9

million.  Heller had represented Cohen, the seller of the Modigliani Work, in the transaction.  Rybolovlev further contends that he was "curious" and "wanted to know the price at which the [Modigliani] painting was sold by its owner."  *See* Levy Decl., Exh. F at 3-5.  Subsequently, at the request of counsel for Accent Delight and Xitrans, both Heller and Cohen confirmed by letter that Cohen had sold the Modigliani work for $93.5 million.  *See id.* at 3.  Both of these letters were used in support of Rybolovlev's position in the Monaco Criminal Proceeding and the Monaco Civil Proceeding.  *See id.* at 3-5; Levy Decl., Exh. G.

17. According to Rybolovlev, Rybolovlev learned via Heller for the first time that Bouvier had earned a profit of more than $20 million in selling the Modigliani Work.  As a result of this claimed discovery by Rybolovlev, Rybolovlev purports to have uncovered the alleged breach by Bouvier of his claimed fiduciary duties.  *See, e.g.,* Levy Decl., Exh. C at ¶ 15; Exh. F at 3-5.

18. Rybolovlev further contends that, as a result of the alleged breach of Bouvier's fiduciary duties, he substantially overpaid, via the entities that he controls, for the Works.  In doing so, Rybolovlev has relied on the opinions of, among others, Heller to determine what he contends is the actual value of the Works and the monetary damages claimed to have been sustained by Rybolovlev and his entities.  *See* Levy Decl., Exh. F at 5.  For example, Rybolovlev asserts that Heller told him that Heller would never have advised buying a particular painting by Leonardo da Vinci that Rybolovlev had purchased from Bouvier "because there were doubts about the quality of the work."  *See id.* at 3-5.

19. Bouvier seeks Court authorization to subpoena Respondents Heller and the Heller Entities for documents and other evidence in the possession, custody, and/or control of Heller and/or the Heller Entities concerning the facts set forth above, to take the deposition of Heller, and to take the depositions of authorized representatives of the Heller Entities regarding various topics.  *See* Levy Decl., Exh. A.

20. The Respondents are not parties to any of the Foreign Proceedings or to the Singapore Proceeding.

## Conclusion

21. Bouvier and MEI satisfy all of the statutory criteria for obtaining the requested discovery:

 (a) Heller and the Heller Entities are found within this judicial district.

 (b) The documents and testimony sought from Heller and the Heller Entities constitute evidence "for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation," 28 U.S.C. § 1782(a).

 (c) Bouvier and MEI are parties to one or more of the Foreign Proceedings and, therefore, are "interested person[s]" within the meaning of Section 1782.

22. In addition, the discretionary factors that may consider be under Section 1782 favor granting this Application and Petition.

23.     Accordingly, Bouvier and MEI respectfully request that this Court grant this Application and Petition and permit issuance of the requested subpoenas.

Dated: New York, New York
       September 25, 2015

                                      Respectfully submitted,

                                      McKool Smith, P.C.

                        By: _____
                               Daniel W. Levy
                               dlevy@mckoolsmith.com
                               One Bryant Park
                               47th Floor
                               New York, New York  10036
                               Telephone: (212) 402-9400
                               Telecopier: (212) 402-9444

                               Attorneys for Petitioners Yves Bouvier
                               and MEI Invest Ltd.

McKool 1119554v7